## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIXSA GADDY, SHAWN MARIE RYAN, and WILLIAM O'BRYANT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| THE LONG & FOSTER COMPANIES, INC., a Virginia corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs Marixsa Gaddy, Shawn Marie Ryan, and William O'Bryant ("Plaintiffs"), individually and on behalf of all other similarly situated individuals (the "Class" as defined below), by and through the undersigned, file this Class Action Complaint against Defendant The Long & Foster Companies, Inc. ("Long & Foster" or "Defendant") and allege the following based upon personal knowledge of facts pertaining to themselves and upon information and belief based on the investigation of counsel as to all other matters.

### NATURE OF THE ACTION

1.      With this action, Plaintiffs seek to hold Defendant responsible for the harms it caused them and similarly situated persons in the massive and preventable data breach discovered in August 2020 (the "Data Breach" or "Breach") that impacted both Defendant and its subsidiaries, including Prosperity Home Mortgage, LLC, Fonville Morisey Companies, Long & Foster Insurance, Long & Foster Real Estate, RGS Title, LLC, Sage Title Group, LLC, Settlement

Professionals, LLC, The Vacation Rental Division of Long & Foster Real Estate, Inc., and/or Mid-States Title Insurance Agency, Inc.

2.      Defendant is the largest private residential real estate company in the United States by sales volume. It owns a family of companies, including Long & Foster Real Estate, and has market-leading affiliated business lines in mortgage, settlement services, insurance, and property management.[1]

3.      Plaintiffs and the "Class" (as further defined below) are current and former employees ("Employees"[2]) of Defendant.

4.      Through their employment[3], Plaintiffs and the Class were required to provide their personally identifiable information ("PII") to Defendant or one of its subsidiaries. Defendant assumed the special relationship and duties that it owed the Class members when it promised to securely store the PII of Plaintiffs and the Class. Defendant betrayed Plaintiffs' trust and that of the other Class members by failing to properly safeguard and protect their PII, thereby enabling cyber criminals to steal their PII.

5.      The PII compromised in the Data Breach includes names, addresses, telephone numbers, Social Security numbers, W-2 details (wage and withholding information) and bank account number information for the account to which Plaintiffs' and Class members' paychecks are deposited. *See* Notice of Data Breach, attached hereto as **Exhibit 1**.

6.      Defendant identified additional individuals who were affected by the Data Breach by Notice of Data Breach dated December 1, 2020. *See* Supplemental Notice of Data Breach,

---

[1] *See* "HomeServices of America Acquires The Long & Foster Companies." *Long & Foster Newsroom*, 7 Sept. 2017, newsroom.longandfoster.com/news/homeservices-america-acquires-long-foster-companies/.
[2] "Employees" also includes property managers and vacation rental owners.
[3] "Employment" also includes the relationship between Defendant and its property managers and vacation rental owners.

attached hereto as **Exhibit 2**. The Vacation Rental Division of Long & Foster Real Estate, Inc., a subsidiary of Defendant, identified that its property managers' and vacation rental owners' PII was compromised during the Data Breach, including names, addresses, W-9 details (Social Security numbers), and Form 1099 details (tax payer identification number, income, and withholding information). The affected PII relates to the individual named on the W-9, which was required to be supplied to Defendant.

7.    While it was on or around October 5, 2020 when Defendant determined the types of PII belonging to property managers and vacation rental owners that was compromised in the Data Breach, it did not notify individuals until on or around December 1, 2020, nearly two months after its discovery. *See* **Exhibit 2**.

8.    Not only did the unauthorized third party take Plaintiffs' and Class members' PII, but Class members' PII could now be for sale on the dark web. This is an immediate and recognizable harm to Plaintiffs and the Class members.

9.    Due to Defendant's negligence, cyber criminals obtained and now possess everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals for years to come.

10.    For the rest of their lives, Plaintiffs and Class members will be forced to deal with the danger of identity thieves possessing their PII. Plaintiffs and Class members have already lost time responding to the Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach.

11.    Plaintiffs bring this action individually and on behalf of the Class, seeking actual damages, punitive damages, restitution, and injunctive and declaratory relief, reasonable attorney

fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems proper.

## THE PARTIES

**Plaintiff Marixsa Gaddy**

12.     Plaintiff Marixsa Gaddy ("Plaintiff Gaddy" or "Ms. Gaddy") is a citizen of New Jersey residing in Browns Mills, New Jersey.

13.     Ms. Gaddy was employed by Defendant from approximately 2010-2014, and received Defendant's *Notice of Data Breach* (an example of which is attached as **Exhibit 1** hereto), dated on or about September 14, 2020, on or about that date.

14.     As a condition of employment, Defendant required that she provide her PII, including but not limited to her name, address, telephone number, financial account information, bank account numbers, date of birth, Social Security number and other information contained on her IRS W-2 Form.

15.     In or about November 2020, Ms. Gaddy discovered that an unauthorized third person opened a credit card in her name. The unauthorized third person made one charge on the account before Ms. Gaddy cancelled the card, but it remains on her credit report as a cancelled account.

16.     As a result of the fraudulent account and the Data Breach notice, Ms. Gaddy spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, exploring credit monitoring and identity theft insurance options, cancelling the fraudulent account, freezing her credit reports, self-monitoring her accounts, and attempting to sign up for the credit monitoring offered by Defendant. Ms. Gaddy was unable to take advantage of the offered credit monitoring because she called approximately

4

one day following the time Defendant designated for the offer to expire. This time has been lost forever and cannot be recaptured.

17.    Additionally, Ms. Gaddy is very careful about sharing her PII. She has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

18.    Ms. Gaddy stores any documents containing her PII in a safe and secure location, or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

19.    Ms. Gaddy suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Ms. Gaddy entrusted to Defendant for the purpose of her employment, which was compromised in and as a result of the Data Breach.

20.    Ms. Gaddy suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

21.    Ms. Gaddy has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her Social Security number, in combination with her name, and other PII, being placed in the hands of unauthorized third-party cyber criminals.

22.    Ms. Gaddy has a continuing interest in ensuring that her PII which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Shawn Marie Ryan**

23.    Plaintiff Shawn Marie Ryan ("Plaintiff Ryan" or "Ms. Ryan") is a citizen of Maryland residing in Silver Spring, Maryland.

5

24.     Ms. Ryan was previously employed by Defendant from 2015-2016 and received Defendant's *Notice of Data Breach* (an example of which is attached as **Exhibit 1** hereto), dated on or about September 14, 2020, on or about September 20, 2020.

25.     As a condition of employment, Defendant required that she provide her PII, including but not limited to her name, address, telephone number, financial account information, bank account numbers, date of birth, Social Security number, driver's license (including her photo for identification purposes), and other information contained on her IRS W-2 Form.

26.     As a result of the Data Breach, Ms. Ryan spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, exploring credit monitoring and identity theft insurance options, and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

27.     Additionally, Ms. Ryan is very careful about sharing her PII. She has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

28.     Ms. Ryan stores any documents containing her PII in a safe and secure location, or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

29.     Ms. Ryan suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that Ms. Ryan entrusted to Defendant for the purpose of her employment, which was compromised in and as a result of the Data Breach.

30.     Ms. Ryan suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

31.     Ms. Ryan has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially

her Social Security number, in combination with her name, and other PII, being placed in the hands of unauthorized third-party cyber criminals.

32.     Ms. Ryan has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff William O'Bryant**

33.     Plaintiff William O'Bryant ("Plaintiff O'Bryant" or "Mr. O'Bryant") is a citizen of Pennsylvania residing in Pennsylvania.

34.     Mr. O'Bryant was previously employed by Defendant from 2015-2018 and received Defendant's *Notice of Data Breach* (an example of which is attached as **Exhibit 1** hereto), which is dated September 14, 2020, on or about September 20, 2020.

35.     As a condition of employment, Defendant required that he provide his PII, including but not limited to his name, address, telephone number, financial account information, bank account numbers, date of birth, Social Security number and other information contained on his IRS W-2 Form.

36.     As a result of the Data Breach, Mr. O'Bryant has spent significant time researching, dealing with, and responding to the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, exploring credit monitoring and identity theft insurance options, and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

37.     Additionally, Mr. O'Bryant is very careful about sharing his PII. He has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

38.     Mr. O'Bryant stores any documents containing his PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

39.     Mr. O'Bryant suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Mr. O'Bryant entrusted to Defendant for the purpose of his employment, which was compromised in and as a result of the Data Breach.

40.     Mr. O'Bryant suffered lost time, annoyance, interference, stress, and inconvenience as a result of the Data Breach, and has anxiety and increased concerns for the loss of his privacy.

41.     Mr. O'Bryant has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security number, in combination with his name and other PII, being placed in the hands of unauthorized third-party cyber criminals.

42.     Mr. O'Bryant has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Defendant Long & Fosters Companies, Inc.**

43.     Defendant is incorporated in the State of Virginia and its principal place of business is in Chantilly, Virginia.

44.    Defendant was established in 1968 and touts itself as "the Nation's No. 1 real estate firm."[4] It is a "full-serve brokerage firm, offering residential and commercial real estate, mortgage, settlement, insurance, property management, corporate relocation and vacation rental services."[5]

JURISDICTION AND VENUE

45.    This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiffs and members of the class are citizens of states different from Defendant.

46.    This Court has personal jurisdiction over Defendant because Defendant maintains sufficient minimum contacts in New Jersey such that it intentionally avails itself of this Court's jurisdiction by conducting operations here.

47.    Venue is likewise proper as to Defendant in this District under 28 U.S.C. § 1391(a)(1) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district. Defendant conducts business through this District.

FACTUAL ALLEGATIONS

A.    **The Data Breach and Defendant's Failed Response.**

48.    On or about August 22, 2020, Defendant determined it was the victim of a ransomware attack, wherein an unauthorized third party had accessed Defendant's servers and systems, resulting in the Data Breach and exposure of the PII of at least tens of thousands of persons.

49.    PII in the possession of Defendant's subsidiaries was also impacted, including Prosperity Home Mortgage, LLC, Fonville Morisey Companies, Long & Foster Insurance, Long

---

[4] *See* https://www.longandfoster.com/pages/about-us.
[5] *Id.*

9

& Foster Real Estate, RGS Title, LLC, Sage Title Group, LLC, Settlement Professionals, LLC, The Vacation Rental Division of Long & Foster Real Estate, Inc., and/or Mid-States Title Insurance Agency, Inc.

50.    Defendant began notifying Plaintiffs and Class members of the Data Breach on or around September 14, 2020, nearly a month after the Data Breach was first discovered.

51.    The stolen PII at issue has great value to the hackers, due to the large number of individuals affected and the fact that bank account information, withholding information, and Social Security numbers were part of the data that was compromised.

52.    Defendant states on its website that it has over ten thousand (10,000) agents and staff, and more than 210 (two hundred and ten) offices nationwide[6], thus making it likely that thousands of individuals' PII has been stolen and is being sold, or will be sold in coming months and years, on the dark web.

**B.    Cyber Criminals Have Used and Will Continue to Use the Employees' PII to Defraud Them.**

53.    PII is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety sordid ways for criminals to exploit Plaintiffs and the Class members and to profit off their misfortune.

54.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[7] For example, with the PII stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to

---

[6] *Id.*
[7] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[8] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and the Class members.

55.    PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[9]

56.    For example, it is believed that certain PII compromised in the 2017 Experian data breach is now being used, three years later, by identity thieves to apply for COVID-19-related unemployment benefits in the state of Oklahoma.[10]

57.    The PII exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein.

58.    These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to PII, they will use it.[11]

59.    Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[12]

---

[8]*See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.
[9] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu
[10]    *See* https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html; *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/
[11]Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.
[12]*Data Breaches Are Frequent*, *supra* note 11.

60.     With this Data Breach, identity thieves have already started to prey on the employee victims of the Data Breach, and we can anticipate that this will continue.

61.     Victims of the Data Breach, like Plaintiffs and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[13]

62.     Defendant has acknowledged the harm caused by the Data Breach by offering Plaintiffs and Class members a woefully inadequate twenty-four (24) months of identity theft repair and monitoring services. Plaintiffs and Class members will need much more than this to protect them from a lifetime of identity theft risk.

63.     Due to the nature of Data Breach and the compromise of PII, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. Furthermore, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's PII)—it does not prevent identity theft.[14] Once the twelve-month period has expired, Plaintiffs and Class members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendant's gross negligence.

64.     As a direct and proximate result of the Data Breach, Plaintiffs and the Class have been damaged, and have been placed at an imminent, immediate, and continued increased risk of harm from continued fraud and identity theft. Plaintiffs and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial

---

[13] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

[14] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

65.    Plaintiffs and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a.    Trespass, damage to, and theft of their personal property including PII;

b.    Improper disclosure of their PII;

c.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and having been already misused;

d.    Damages flowing from Defendant's untimely and inadequate notification of the data breach;

e.    Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their PII and that identity thieves have already used that information to defraud other victims of the Data Breach;

f.    Ascertainable losses in the form of time taken off work to respond to identity theft and attempt to restore identity, including lost opportunities, wasted paid-time off, and lost wages from uncompensated time off;

g.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h.    Ascertainable losses in the form of deprivation of the value of Plaintiffs' and Class members' personal information for which there is a well-established and quantifiable national and international market.

i. Ascertainable losses arising out of the time and effort required to mitigate, and effects of, the actual fraudulent and unauthorized opening of a credit card and charge(s) made thereon.

66.     Moreover, Plaintiffs and Class members have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself wholly incapable of protecting Plaintiffs' PII.

67.     Plaintiffs are desperately trying to mitigate the damage that Defendant has caused them but, given the kind of PII Defendant made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their PII, Plaintiffs and all Class members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security Number, with all the loss of credit and employment difficulties that come with this change.[15]

68.     None of this should have happened. The Data Breach was preventable.

**C.     Defendant was Aware of the Risk of Cyberattacks.**

69.     Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it.

70.     In the wake of the rise in data breaches, the Federal Trade Commission has issued an abundance of guidance for companies in an effort to help them avoid falling victim to these attacks.[16]

---

[15]*Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.
[16] *See e.g.*, *Protecting Personal Information: A Guide for Business,* FTC, available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.

71.    Furthermore, data breach issues were at a record high in 2019. According to statistics from norton.com, there was a 54% increase in publicly reported data breaches in the first six months of 2019 compared to the first six months of 2018.[17]

72.    The general public can tell one the names of some of the biggest data breaches to date: Target[18], Yahoo,[19] Marriott International,[20] Chipotle, Chili's, Arby's,[21] Equifax,[22] and others.[23]

73.    Although Defendant was trusted by thousands of employees to maintain the integrity of their PII, that trust was belied by Defendant's failure to impose and maintain the necessary safeguards that would have prevented the Data Breach.

74.    Defendant clearly knew or should have known of the risks of potential data breaches and should have ensured that the adequate protections against such were in place.

---

[17] *See 2019 Data Breaches: 4 Billion Records Breached So Far*, Norton, available at https://us.norton.com/internetsecurity-emerging-threats-2019-data-breaches.html.

[18] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.

[19] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.

[20] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/.

[21] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, C|NET (Aug. 1, 2018), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.

[22] Leonhardt, Megan. "Equifax to Pay $700 Million for Massive Data Breach. Here's What You Need to Know about Getting a Cut." *CNBC*, CNBC, 23 July 2019, www.cnbc.com/2019/07/22/what-you-need-to-know-equifax-data-breach-700-million-settlement.html#:~:text=The%20company%20announced%20the%20data,and%20even%20driver's%20license%20numbers.

[23] *See, e.g.*, Taylor Armerding, *The 18 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Dec. 20, 2018), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

D. **Defendant Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiffs' and Class Members' PII.**

75.     Data breaches are preventable.[24] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[25] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[26]

76.     "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[27]

77.     Defendant required Plaintiffs and Class members to surrender their PII, including their names, addresses, Social Security Numbers, pay and withholdings, and bank account information, and were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such PII.

78.     Defendant had a fiduciary duty to protect Plaintiffs' and the Class's PII as the guardian of Plaintiffs' and Class members' PII.

79.     Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendant's failure to incur the costs

---

[24]Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[25]*Id.* at 17.
[26]*Id.* at 28.
[27]*Id.*

necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiffs' and Class members' PII.

80.    Defendant knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if Plaintiffs' and Class members' PII was stolen, including the significant costs that would be placed on Plaintiffs and Class members as a result of a breach.

81.    The mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class members' PII was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiffs' and Class members' PII from those risks left that information in a dangerous condition.

82.    Defendant disregarded the rights of Plaintiffs and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiffs' and Class members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach; and (v) failing to provide Plaintiffs and Class members prompt and accurate notice of the Data Breach.

## CLASS ACTION ALLEGATIONS

83.    Plaintiffs bring this action against Defendant on behalf of themselves and all other individuals similarly situated under Federal Rule of Civil Procedure 23. Plaintiffs assert all claims on behalf of the class and subclasses defined as follows:

**Nationwide Class**

**All persons residing in the United States whose personally identifiable information was compromised as a result of the Data Breach that occurred in August 2020.**

**New Jersey Subclass**

**All persons residing in New Jersey whose personally identifiable information was compromised as a result of the Data Breach that occurred in August 2020.**

**Maryland Subclass**

**All persons residing in New Jersey whose personally identifiable information was compromised as a result of the Data Breach that occurred in August 2020.**

**Pennsylvania Subclass**

**All persons residing in Pennsylvania whose personally identifiable information was compromised as a result of the Data Breach that occurred in August 2020.**

84.    Excluded from the Nationwide Class and Subclasses are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

85.    Plaintiffs reserve the right to amend the above definitions or to propose alternative or additional subclasses subsequent pleadings and motions for class certification.

86.    The Nationwide Class, the New Jersey Subclass, the Maryland Subclass, and the Pennsylvania Subclass are collectively referred to as the "Class" unless otherwise specified.

a.    **Class Certification is Appropriate**

87.    The proposed Class and any additional subclasses meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

88.    **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. Each of the proposed Subclasses also are believed to be so numerous that joinder of all members would be impractical, given that Defendant currently employs more than 10,000 people, and the Classes consist of former employees of Defendant.

89.    **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured through Defendant's uniform misconduct. The same event and conduct that gave rise to Plaintiffs' claims are identical to those that give rise to the claims of every other Class member because Plaintiffs and each member of the Class had their sensitive PII compromised in the same way by the same conduct of Defendant.

90.    **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the Class and proposed Subclasses that they seek to represent; Plaintiffs have retained counsel competent and highly experienced in data breach class action litigation; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

91.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties

and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

92.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

b.    Whether Defendant engaged in the wrongful conduct alleged herein;

c.    Whether Defendant failed to adequately safeguard Plaintiffs' and the Class's PII;

d.    Whether Defendant owed a duty to Plaintiffs and the Class to adequately protect their PII, and whether it breached this duty;

e.    Whether Defendant violated state and federal laws, thereby breaching its duties to Plaintiffs and the Class as a result of the Data Breach;

f.    Whether Defendant knew or should have known that its computer and network security systems were vulnerable to a data breach;

g.    Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

h.    Whether Defendant breached contractual duties to Plaintiffs and the Class to use reasonable care in protecting their PII;

i.    Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiffs and the Class;

j.    Whether Defendant continues to breach duties to Plaintiffs and the Class;

k.  Whether Plaintiffs and the Class suffered injury as a proximate result of Defendant's negligent actions or failures to act;

l.  Whether Plaintiffs and the Class are entitled to recover damages, equitable relief, and other relief; and

m.  Whether Defendant's actions alleged herein constitute gross negligence, and whether Plaintiffs and Class members are entitled to punitive damages.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
**(On Behalf of Plaintiffs and the Class or, alternatively, Plaintiffs and the Separate Subclasses)**

93.  Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

94.  As a condition of their employment, Plaintiffs and Class members were obligated to provide Defendant with their PII.

95.  Upon accepting and storing the PII of Plaintiffs and Class members on its computer systems and networks, Defendant undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class members could and would suffer if the PII was wrongfully disclosed. Plaintiffs and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiffs and the Class members had no ability to protect their PII that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiffs and the Class.

96.  Defendant was well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal customer and employee PII.

97.     Defendant owed Plaintiffs and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiffs and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

98.     Defendant's duty extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

99.     Defendant had duties to protect and safeguard the PII of Plaintiffs and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive PII. Additional duties that Defendant owed Plaintiffs and the Class include:

a.  To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiffs' and Class members' PII was adequately secured from impermissible release, disclosure, and publication;

b.  To protect Plaintiffs' and Class members' PII in its possession by using reasonable and adequate security procedures and systems;

c.  To implement processes to quickly detect a data breach, security incident, or intrusion involving its networks and servers; and

d.  To promptly notify Plaintiffs and Class members of any data breach, security incident, or intrusion that affected or may have affected their PII.

22

100.    Plaintiffs and the Class were the intended beneficiaries of Defendant's duties, creating a special relationship between them and Defendant. Defendant was in a position to ensure that its systems were sufficient to protect the PII that Plaintiffs and the Class had entrusted to it.

101.    Defendant breached its duties of care by failing to adequately protect Plaintiffs' and Class members' PII. Defendant breached its duties by, among other things:

   a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, and protecting the PII in its possession;

   b.    Failing to protect the PII in its possession using reasonable and adequate security procedures and systems;

   c.    Failing to consistently enforce security policies aimed at protecting Plaintiffs and the Class's PII;

   d.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

   e.    Failing to promptly notify Plaintiffs and Class members of the Data Breach that affected their PII.

102.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

103.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiffs and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

104.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the PII of Plaintiffs and Class members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and

secure the PII of Plaintiffs and Class members while it was within Defendant's possession and control.

105.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class members, Defendant prevented Plaintiffs and Class members from taking meaningful, proactive steps to securing their PII and mitigating damages.

106.    As a result of the Data Breach, Plaintiffs and Class members have spent time and effort to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, signing up for credit monitoring and identity theft prevention services and closely reviewing and monitoring bank accounts and credit reports.

107.    Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

108.    The damages Plaintiffs and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

109.    Plaintiffs and the Class have suffered injury and are entitled to actual and punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Class or, alternatively, Plaintiffs and the Separate Subclasses)**

110.    Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

111.    Plaintiffs and the Class bring this claim in the alternative to all other claims and remedies at law.

112.    Plaintiffs and Class members conferred a monetary benefit upon Defendant in the form of their employment with Defendant.

113.    Defendant collected, maintained, and stored the PII of Plaintiffs and Class members.

114.    Defendant, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with Plaintiffs and the Class members, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on data security measures to secure Plaintiffs' and Class members' PII.

115.    Instead of providing for a reasonable level of security that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar PII, Defendant, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiffs and Class members.

116.    As a direct and proximate result of Defendant's decision to profit rather than provide adequate data security, Plaintiffs and Class members suffered and continue to suffer actual damages in (i) the amount of the savings and costs Defendant reasonably and contractually should have expended on data security measures to secure Plaintiffs' PII, (ii) time and expenses mitigating harms, (iii) diminished value of PII, (iv) loss of privacy, and (v) an increased risk of future identity theft.

117.    Defendant, upon information and belief, has therefore engaged in opportunistic, unethical, and immoral conduct by profiting off of conduct that it knew was creating a significant and highly likely risk of substantial and certainly impending harm to Plaintiffs and the Class in direct violation of Plaintiffs' and Class members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its breach.

118.    Accordingly, Plaintiffs and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiffs and the Class.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Class or, alternatively, Plaintiffs and the Separate Subclasses)**

119.    Plaintiffs incorporate by reference the above allegations as if fully set forth herein.

120.    Defendant offered employment to Plaintiffs and Class members, either directly or through acquiring the businesses for which Plaintiff and Class members worked, in exchange for compensation and other employment benefits.

121.    Defendant either required Plaintiff and Class members to provide their PII or acquired their PII from their former employers which Defendant acquired, including names, addresses, dates of birth, Social Security numbers, W-2 details, bank account information, and other personal information.

122.    Implied in these exchanges was a promise by Defendant to ensure that the PII of Plaintiff and Class members in its possession was only used to provide the agreed-upon compensation and other employment benefits from Defendant.

123.    Defendant was therefore required to reasonably safeguard and protect the PII of Plaintiff and Class members from unauthorized disclosure and/or use.

124.    Plaintiff and Class members accepted Defendant's employment offer and fully performed their obligations under the implied contract with Defendant by providing their PII, directly or indirectly, to Defendant, among other obligations.

125.    Plaintiff and Class members would not have provided and entrusted their PII to

Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their PII for uses other than compensation and other employment benefits from Defendant.

126.    Defendant breached the implied contracts with Plaintiff and Class members by failing to reasonably safeguard and protect Plaintiff's and Class members' PII.

127.    As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class members, Plaintiff and the Class members suffered injury as described in detail in this Complaint and are entitled to damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1, *ET SEQ.***
**(On Behalf of Plaintiff O'Bryant and the Pennsylvania Subclass)**

128.    Plaintiff O'Bryant incorporates by reference the above allegations as if fully set forth herein.

129.    Defendant violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 P.S. §§201-1 *et seq.*) by failing to prevent Plaintiff O'Bryant's and Pennsylvania Subclass members' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff O'Bryant and Pennsylvania Subclass members.

130.    Defendant violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-2(4)(xxi) when it engaged in deceptive conduct that created a likelihood of confusion and misunderstanding by assuring Plaintiff O'Bryant and the Pennsylvania Subclass members that their PII would be kept safe and unobtainable from unauthorized third persons.

27

131.    As a direct and proximate result of Defendant's acts, Plaintiff O'Bryant's and the Pennsylvania Subclass members' PII was subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of the duty.

132.    As a direct and proximate result of Defendant's acts, Plaintiff O'Bryant and the Pennsylvania Subclass members were injured and lost money or property, including but not limited to the loss of Plaintiff O'Bryant's and the Pennsylvania Subclass members' legally protected interest in the confidentiality and privacy of their PII, damages, and additional losses as described above.

133.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff O'Bryant's and the Pennsylvania Subclass members' PII and that the risk of a data breach or theft was high. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff O'Bryant and the Pennsylvania Subclass members.

134.    Plaintiff O'Bryant and Pennsylvania Subclass members seek relief under 73 P.S. §201-9.2, including, but not limited to, recovery of actual damages or damages in an amount of $100.00, whichever is greater; injunctive or declaratory relief; any other relief the court deems proper; and attorneys' fees and costs (pursuant to 73 P.S. §201-9.2).

135.    Plaintiff O'Bryant and the Pennsylvania Subclass members also seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards Plaintiff O'Bryant's and the Pennsylvania Subclass members' PII by implementing reasonable data security procedures and practices.  Such relief is particularly important because Defendant continues to hold Plaintiff O'Bryant's and the Pennsylvania Subclass members' PII.  These individuals have an interest in ensuring that their PII is reasonably protected.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT**
**N.J. REV. STAT. §§56:8-1, *ET SEQ.***
**(On Behalf of Plaintiff Gaddy and the New Jersey Subclass)**

136.    Plaintiff Gaddy incorporates by reference the above allegations as if fully set forth herein.

137.    Defendant violated New Jersey's Consumer Fraud Act (N.J. Rev. Stat. §§56:8-1, *et seq.*) by failing to prevent Plaintiff Gaddy and New Jersey Subclass members' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff Gaddy and New Jersey Subclass members.

138.    Defendant engaged in unconscionable and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the advertisement of their services in violation of N.J. Rev. Stat. §56:8-2, including but not limited to the following:

    a.    Defendant misrepresented material facts, pertaining to the sale of their services, to the New Jersey Subclass by represent that they would maintain adequate data privacy and security practices and procedures to safeguard New Jersey Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

    b.    Defendant misrepresented material facts, pertaining to the sale of their services, to the New Jersey Subclass by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff Gaddy's and the New Jersey Subclass's PII;

    c.    Defendant knowingly omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Plaintiff Gaddy's and the

New Jersey Subclass's PII with the intent that others rely on the omission, suppression, and concealment;

d.  Defendant engaged in unconscionable and deceptive acts and practices with respect to the sale of their services by failing to maintain the privacy and security of Plaintiff Gaddy's and the New Jersey Subclass' PII, in violation of duties imposed by and public policies reflected in applicable federal and state statutes, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. §45); and

e.  Defendant engaged in unconscionable and deceptive acts and practices with respect to the sale of their services by failing to disclose the Data Breach to Plaintiff Gaddy and the New Jersey Subclass in a timely and accurate manner, in violation of N.J. Rev. Stat. §56:8-163(a).

139.  As a direct and proximate result of Defendant's acts, Plaintiff Gaddy's and the New Jersey's Subclass members' PII was subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of the duty.

140.  As a direct and proximate result of Defendant's acts, Plaintiff Gaddy and the New Jersey Subclass members suffered an ascertainable loss, were injured and lost money or property, including but not limited to the loss of Plaintiff Gaddy's and the New Jersey Subclass members' legally protected interest in the confidentiality and privacy of their PII, damages, and additional losses as described above.

141.  Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff Gaddy's and the New Jersey Subclass members' PII and that the risk of a data breach or theft was high. Defendant failed to implement and maintain

30

reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff Gaddy and the New Jersey Subclass members.

142.    Plaintiff Gaddy and the New Jersey Subclass members seek relief under N.J. Rev. Stat. §56:8-19, including, but not limited to, recovery of actual damages; an award threefold the damages sustained by Plaintiff Gaddy and the New Jersey Subclass; injunctive or declaratory relief; any other relief the Court deems proper; and attorneys' fees and costs (pursuant to N.J. Rev. Stat. §56:8-19).

143.    Plaintiff Gaddy and the New Jersey Subclass members also seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards Plaintiff Gaddy's and the New Jersey Subclass members' PII by implementing reasonable data security procedures and practices.  Such relief is particularly important because Defendant continues to hold Plaintiff Gaddy's and the New Jersey Subclass members' PII.  These individuals have an interest in ensuring that their PII is reasonably protected.

### SIXTH CAUSE OF ACTION
### VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT
### MD CODE §§13-301, *ET SEQ.*
### (On Behalf of Plaintiff Ryan and the Maryland Subclass)

144.    Plaintiff Ryan incorporates by reference the above allegations as if fully set forth herein.

145.    Defendant violated Maryland's Consumer Protection Act (MD Code §§13-301, *et seq.*) by failing to prevent Plaintiff Ryan's and Maryland Subclass members' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff Ryan and Maryland Subclass members.

146.    Defendant engaged in unconscionable and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the advertisement of their services in violation of MD Code §13-301, *et seq*.,  including but not limited to the following:

a.    Defendant misrepresented material facts, pertaining their services, to Plaintiff Ryan and the Maryland Subclass by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff Ryan's and the Maryland Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

b.    Defendant misrepresented material facts, pertaining to the sale of their services, to Plaintiff Ryan and the Maryland Subclass by representing that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff Ryan's and the Maryland Subclass's PII;

c.    Defendant knowingly omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Plaintiff Ryan's and the Maryland Subclass's PII with the intent that others rely on the omission, suppression, and concealment; and

d.    Defendant engaged in unconscionable and deceptive acts and practices with respect to the sale of their services by failing to maintain the privacy and security of Plaintiff Ryan's and the Maryland Subclass' PII, in violation of duties imposed by and public policies reflected in applicable federal and state statutes, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. §45).

32

147.    As a direct and proximate result of Defendant's acts, Plaintiff Ryan's and the Maryland Subclass members' PII was subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of the duty.

148.    As a direct and proximate result of Defendant's acts, Plaintiff Ryan and the Maryland Subclass members were injured and lost money or property, including but not limited to the loss of Plaintiff Ryan's and the Maryland Subclass members' legally protected interest in the confidentiality and privacy of their PII, damages, and additional losses as described above.

149.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff Ryan's and the Maryland Subclass members' PII and that the risk of a data breach or theft was high. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff Ryan and the Maryland Subclass members.

150.    Plaintiff Ryan and the Maryland Subclass members seek relief under MD Code §13-408, including, but not limited to, recovery of actual damages; injunctive or declaratory relief; any other relief the Court deems proper; and attorneys' fees and costs (pursuant to MD Code §13-408).

151.    Plaintiff Ryan and the Maryland Subclass members also seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards Plaintiff Ryan's and the Maryland Subclass members' PII by implementing reasonable data security procedures and practices.  Such relief is particularly important because Defendant continues to hold Plaintiff Ryan's and the Maryland Subclass members' PII.  These individuals have an interest in ensuring that their PII is reasonably protected.

**SEVENTH CAUSE OF ACTION**
**DECLARATORY RELIEF**
**(On Behalf of Plaintiffs and the Class or, alternatively, Plaintiffs and the Separate Subclasses)**

152.    Plaintiffs incorporate by reference all the allegations set forth above as if fully referenced herein.

153.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

154.    As previously alleged and pleaded, Defendant owes duties of care to Plaintiffs and Class members that require it to adequately secure their PII.

155.    Defendant still possesses the PII of Plaintiffs and the Class members.

156.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiffs and the Class members.

157.    Upon information and belief, Defendant is taking some steps to increase its data security but there is nothing to prevent Defendant from reversing these changes once it has weathered the increased public attention resulting from this Data Breach, and to once again place profits above protection.

158.    Plaintiffs, therefore, seek a declaration that (1) Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

      a.    Ordering Defendant to engage third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis,

and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. Ordering Defendant to significantly increase its spending on cybersecurity, including systems and personnel;

c. Ordering Defendant to engage third-party security auditors and internal personnel to run automated security monitoring;

d. Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

e. Ordering that Defendant purge, delete, and destroy in a reasonably secure manner any PII not necessary for its provisions of services;

f. Ordering that Defendant conduct regular database scanning and securing checks;

g. Ordering Defendant to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

h. Ordering Defendant to implement and enforce adequate retention policies for PII, including destroying PII as soon as it is no longer necessary for it to be retained; and

i. Ordering Defendant to meaningfully educate its employees about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendant as follows:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class

counsel, and finding that Plaintiffs are proper representatives of the Class
requested herein;

b.   A judgment in favor of Plaintiffs and the Class awarding them appropriate
monetary relief, including actual damages, punitive damages, attorney fees,
expenses, costs, and such other and further relief as is just and proper;

c.   An order providing injunctive and other equitable relief as necessary to
protect the interests of the Class as requested herein;

d.   An order requiring Defendant to pay the costs involved in notifying the Class
members about the judgment and administering the claims process;

e.   A judgment in favor of Plaintiffs and the Class awarding them pre-judgment
and post-judgment interest, reasonable attorneys' fees, costs and expenses as
allowable by law; and

f.   An award of such other and further relief as this Court may deem just and
proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby demand a trial by jury on all appropriate issues raised in this Class Action
Complaint.

Dated: February 11, 2021                    Respectfully submitted,

                                            _s/ Gary S. Graifman_
                                            Gary S. Graifman
                                            **KANTROWITZ, GOLDHAMER &**
                                            **GRAIFMAN, P.C.**
                                            135 Chestnut Ridge Road
                                            Montvale, New Jersey 07645
                                            Phone: (201) 391-7000
                                            Fax:    (201) 307-1086
                                            ggraifman@kgglaw.com

                                            *William B. Federman, OBA #2853
                                            **FEDERMAN & SHERWOOD**
                                            10205 N. Pennsylvania Ave.
                                            Oklahoma City, Oklahoma 73120

(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

***Counsel for Plaintiffs and the Putative Class***

*Pro hac vice application forthcoming*