[ECF No. 45]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

MARIXSA GADDY,

                Plaintiff,

     v.

THE LONG & FOSTER COMPANIES, INC.,

                Defendant.

**Civil Action No. 21-2396 (RBK)(EAP)**

## OPINION

This matter comes before the Court by way of Plaintiff Marixsa Gaddy's Motion, ECF No. 45, seeking leave to file a Second Amended Complaint and to substitute a new lead plaintiff in this action.  The Court has received Defendant The Long & Foster Companies Inc.'s opposition brief, ECF No. 52; Plaintiff's reply brief, ECF No. 57; Defendant's supplemental opposition, ECF No. 59; Plaintiff's sur-reply, ECF No. 60; and Plaintiff's sworn declaration, ECF No. 64-1.  The Court held oral argument on the Motion on October 18, 2022.  ECF Nos. 66, 67.  The Court has considered the parties' submissions and the arguments made at the Motion hearing.  For the reasons that follow, Plaintiff's Motion is **GRANTED**.

## FACTUAL BACKGROUND

Defendant The Long & Foster Companies, Inc. ("Defendant") is a private residential real estate company incorporated in Virginia with a principal place of business in Chantilly, Virginia.  First Amended Class Action Complaint ("FAC"), ECF No. 11, ¶¶ 2, 52.  Plaintiff Marixsa Gaddy

is a former employee of Defendant.[1]  *Id.* ¶¶ 19-20.  As a condition of her employment, Defendant required Plaintiff to provide her personal identifying information ("PII"), including her name, telephone number, financial account information, bank account numbers, date of birth, Social Security number, and other information contained on her IRS W-2 Forms.  *Id.* ¶ 21.

On August 22, 2020, Defendant was the victim of a ransomware attack perpetrated by an unknown third party (the "Data Breach").  *Id.* ¶ 57.  During the attack, the third party gained unauthorized access to the servers and systems of Defendant and its subsidiaries, potentially exposing the PII of at least tens of thousands of persons.  *Id.* ¶¶ 57, 58.  Defendant subsequently contacted the Federal Bureau of Investigation and cybersecurity experts to investigate the Data Breach.  *Id.* ¶ 59.  On or about September 14, 2020, Defendant sent letters to Plaintiffs and other potentially affected individuals notifying them of the Data Breach.  *Id.* ¶ 60, Ex. 1.  Defendant identified additional persons who were possibly impacted by the Data Breach, including property managers and vacation rental owners, and notified those individuals in a letter dated December 1, 2020.  *Id.* ¶ 13, Ex. 2.

In these letters, Defendant stated that "cybercriminal(s) had access to Long & Foster's systems on August 22, 2020," and that affected individuals' "personal information may have been accessible to the cybercriminal(s) as a result."  *Id.*, Ex. 1 at 1; *see id.*, Ex. 2 at 1.  However, Defendant reported that it had "no indication at this time" that the hackers accessed the individuals' PII.  *Id.*, Ex. 1 at 1; *see id.*, Ex. 2 at 1.  The letters further stated that the affected information potentially included individuals' names, telephone numbers, dates of birth, Social Security numbers, bank account information, and details of IRS Forms W-2, W-9, and 1099.  *Id.*, Ex. 1 at

---

[1] On March 16, 2022, the Court granted in part and denied in part Defendant's motion to dismiss the First Amended Complaint.  *See* ECF No. 32.  Consequently, the Court dismissed William O'Bryant and Shawn Marie Ryan as plaintiffs in this action because they lacked Article III standing.  *Id.* at 6-11.

1; Ex. 2 at 1.  Defendant offered the affected individuals twenty-four months of complimentary identity protection services.  *Id*., Ex. 1 at 1; Ex. 2 at 1.

## **PROCEDURAL HISTORY**

On February 11, 2021, Plaintiffs commenced a putative class action on behalf of themselves and a class of other individuals affected by the Data Breach.  Class Action Complaint, ECF No. 1.  On May 18, 2021, Plaintiffs filed a First Amended Complaint, pleading various causes of action.  FAC, ECF No. 11.  Plaintiffs alleged that Defendant was aware of the risk of cyberattacks and that the Data Breach was preventable, but Defendant failed to implement cyber security procedures and protocols necessary to protect the Plaintiffs' PII.  *Id*. ¶¶ 81, 87, 93. Plaintiffs alleged that they experienced: (1) "lost time, annoyance, interference, and inconvenience"; (2) "anxiety and increased concerns for the loss of [their] privacy"; (3) "damages to and diminution in the value of [their] PII"; and (4) "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from [their] PII[.]"  *Id.* ¶¶ 28-30, 38-40, 48-50, 78.  In addition, Plaintiff Marixsa Gaddy alleged that an unauthorized third person opened a credit card in her name with PII exposed in the Data Breach.  *Id*. ¶¶ 22-23.

On June 25, 2021, Defendant moved to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Motion to Dismiss, ECF No. 16.  On March 16, 2022, the Hon. Robert B. Kugler, U.S.D.J. issued an Opinion granting Defendant's motion in part and denying it in part.  Opinion on Defendant's Motion to Dismiss ("MTD Opinion"), ECF No. 32.  Plaintiffs Shawn Marie Ryan ("Ryan") and William O'Bryant ("O'Bryant") were dismissed because their alleged injuries were not sufficiently "concrete" or "actual or imminent" to give them Article III standing.  *Id*. at 6.  However, the Court found that Plaintiff Marixsa Gaddy ("Gaddy") had standing because she pled a sufficiently concrete injury to

her privacy interests in the fraudulent opening of a credit card in her name, which was fairly traceable to the Data Breach. *Id*. at 12. Still, each of Gaddy's causes of action were dismissed except for her negligence claim and her Declaratory Judgment Act claim, to the extent that it was premised on a negligence cause of action. *Id*. at 25-28.

On July 15, 2022, Plaintiff's counsel filed the present Motion requesting the Court's leave to file a proposed Second Amended Complaint and to substitute previously dismissed Plaintiff Ryan for Gaddy as lead Plaintiff. Brief in Support Plaintiff's Motion to Amend First Amended Class Action Complaint ("Pl.'s Br."), ECF No. 45-1. Plaintiff's counsel alleges that they had lost contact with Gaddy because they had received no responses to their repeated calls and emails. Pl.'s Br. at 3. And because of that lack of communication, Plaintiff's counsel had been unable to obtain discovery responses from Gaddy. *Id*. In addition, Plaintiff's counsel argues that Ryan is a proper lead plaintiff because she now has standing. *Id*. at 2-3. Ryan alleges in the proposed Second Amended Complaint that she discovered an unauthorized charge on her Capital One credit card around August 2021. Pl.'s Br., Ex. 2, ¶ 23. Consequently, Capital One cancelled her credit card and mailed her a replacement card. *Id*. Ryan further alleges in the proposed Second Amended Complaint that in June 2022, a third party again attempted to place an unauthorized charge on Ryan's Capital One credit card. *Id*. ¶ 25. Also, following the Data Breach, an unauthorized individual opened an account on a dating website in the Netherlands using Ryan's identity.[2] *Id*. ¶ 29. Plaintiff's counsel argues that these new developments are sufficiently concrete injuries in fact that now give Ryan Article III standing to bring her claims. Pl.'s Br. at 2.

---

[2] The proposed Second Amended Complaint does not attempt to revive any of the causes of action dismissed in the Court's prior Order on the Defendant's Motion to Dismiss. *See* Order, ECF No. 33. Instead, Ryan only seeks to bring claims based on common law negligence and for declaratory relief. *See* Pl.'s Br., Ex. 2, ¶¶ 95, 117.

On August 8, 2022, Defendant filed opposition to Plaintiff's Motion. Defendant's Opposition Brief ("Def.'s Br."), ECF No. 52. Defendant argues that: (1) Plaintiff's Motion is procedurally improper, and Gaddy's claims should be involuntarily dismissed under Federal Rule of Civil Procedure 41(b) for her failure to prosecute; (2) the Motion is futile because Ryan still lacks Article III standing; (3) the Motion is untimely; and (4) the Motion is prejudicial to Defendant. *Id*. On August 22, 2022, Plaintiff filed a reply brief. Plaintiff's Reply Brief ("Pl.'s Reply"), ECF No. 57. On August 31, 2022, with the Court's leave, Defendant filed a supplemental opposition brief. Defendant's Supplemental Brief in Further Opposition ("Def.'s Supp. Br."), ECF No. 59. On September 7, 2022, Plaintiff's counsel filed a sur-reply brief. Plaintiff's Sur-Reply Brief ("Pl.'s Sur-reply"), ECF No. 60.

On October 13, 2022, Gaddy filed a sworn declaration explaining her unavailability from the case. Declaration of Plaintiff Marixsa Gaddy ("Gaddy Decl."), ECF No. 64-1. Gaddy swears that she has been physically disabled after suffering severe injuries in a car accident in 2017, and that her disability makes leaving home and travelling difficult. *Id*. ¶¶ 4, 6, 12. In addition, Gaddy states that she has been in a physical rehabilitation hospital since October 2021. *Id*. ¶ 1. Furthermore, Gaddy attests that she has been under psychiatric care; consequently, her sister turned off her telephone to protect her from telephone solicitors. *Id*. ¶¶ 2-3. Gaddy did not notify her attorneys that her phone had been turned off "due to [her] illness and lack of free time." *Id*. ¶ 3. Gaddy wishes to remain a class member if the case is certified as a class action, but she does not believe that she can serve as a class representative. *Id*. ¶ 8. Gaddy does not object to being replaced as the named plaintiff in this action. *Id*. ¶ 9.

On October 18, 2022, the Court held a hearing attended by Gaddy, Plaintiff's counsel, and Defendant's counsel.  Gaddy, appearing by telephone,[3] confirmed that she intended to withdraw as the named plaintiff in this action due to her physical condition and personal circumstances but wished to remain part of the putative class.  Hearing Transcript of In-Person Oral Argument ("Hearing Tr."), ECF No. 67, 6:1-23.  In addition, Gaddy testified that she first notified Plaintiff's counsel of her inability to continue as the class representative in July 2022.  Hearing Tr. 8:23 to 9:5.[4]  The Court excused Gaddy, and counsel proceeded with oral argument about the procedural validity of the Motion, Ryan's standing, Plaintiff's purported delay in filing the Motion, and prejudice to Defendant if the Motion is granted.  These issues are discussed in turn below.

## DISCUSSION

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings before trial.[5]  A party may amend its pleading once as a matter of course within either 21 days after serving it; or if the pleading is one to which a responsive pleading is required, the earlier of 21 days after service of a responsive pleading or 21 days after a motion under Rule 12(b), (e), or (f).  FED. R. CIV. P. 15(a)(1).  If those deadlines have expired, a party may amend its pleading only with the opposing

---

[3]  On October 13, 2022, Plaintiff filed a Motion, ECF No. 64, seeking to excuse Gaddy from appearing at the hearing or alternatively, seeking leave for Gaddy to participate by telephone due to her medical conditions and difficulty securing transportation to the courthouse.  On October 17, 2022, the Court granted Plaintiff's motion and ordered that Gaddy could attend the hearing by telephone.  ECF No. 65.

[4]  Defendant does not question Gaddy's desire to withdraw as lead plaintiff.  Hearing Tr. 40:3-5.

[5]  Federal Rule of Civil Procedure 16(b)(4) states that, "A schedule may be modified only for good cause and with the judge's consent."  Therefore, "where the Court-ordered deadline for filing an amended pleading has passed, the party seeking to amend the pleading must first show 'good cause' to justify a modification of the scheduling order under Rule 16(b)(4)." *Duran v. Merline*, 923 F. Supp. 2d 702, 732 (D.N.J. 2013).  In this action, the Court had not yet set a deadline to amend the pleadings before Plaintiff filed the present Motion to amend, *see* Scheduling Order, ECF No. 39, and the parties do not address the Rule 16 "good cause" requirement in their briefing.  Therefore, the Court will evaluate Plaintiff's Motion solely under the standard of Rule 15.

party's written consent or the Court's leave.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id*.  The Third Circuit has adopted a liberal approach to the amendment of pleadings.  *Spartan Concrete Prods.*, *LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings."). However, the Court may deny a motion for leave to amend for one of four reasons: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motive; (3) the amendment would prejudice the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but chose not to resolve them.  *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.,* 769 F.3d 837, 849 (3d Cir. 2014).  Ultimately, the decision of whether to grant leave to amend lies within the sound discretion of the Court.  *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

**I.      The Motion is Procedurally Proper**

Defendant's first argument in opposition to Plaintiff's Motion to amend is that the Motion is procedurally improper under Rule 15(a)(2).  At the time of briefing, Gaddy had not yet consented to her removal as the named plaintiff.  Citing to *Ludwig v. Speedway LLC*, No. 20-0824, 2021 WL 2223833 (E.D. Pa. June 2, 2021), Defendant argues that Plaintiff's counsel's only proper course of action is to withdraw from the case and leave the action to be dismissed under Rule 41(b) for Gaddy's failure to prosecute.[6]  Def.'s Supp. Br. at 2.  Defendant argues that permitting Plaintiff's counsel to file an "unauthorized" Motion for leave to amend would improperly allow "counsel to

---

[6]  Federal Rule of Civil Procedure 41(b) states, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Defendant also cites to New Jersey Rule of Professional Conduct 1.16(b)(5) in support of its argument, which states, "a lawyer may withdraw from representing a client if . . . the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled[.]"

step into the shoes of their client-plaintiff" and "would effectively allow *counsel* to commence an entirely new lawsuit on behalf of a new plaintiff with new factual allegations."  Def.'s Br. at 14 (emphasis in original).

Here, the Court need not decide whether the express consent of the named plaintiff is necessary to amend a complaint in a putative class action.[7]  Plaintiff's counsel re-established contact with Gaddy, who filed a sworn statement and testified at the Motion hearing that she no longer wishes to act as a class representative; that she consents to the substitution of Ryan as named plaintiff in this action; and that she would like to remain a class member.  Gaddy Decl. ¶¶ 8-10; Hearing Tr. 6:1-23.  Nevertheless, Defendant maintains that Plaintiff's Motion is improper because it would allow Plaintiff to unfairly prolong the litigation and avoid dismissal by inserting a new lead plaintiff whenever a putative class representative's claim fails.  Hearing Tr. 34:1-18.

In reply, Plaintiff argues that the Motion is procedurally proper because courts "routinely" grant leave to add or substitute new parties under Rule 15(b), and dismissal under Rule 41(b) is not the only required outcome.  Pl.'s Reply at 3.  Plaintiff argues that the Court "should adhere to this District's tolerant attitude towards the substitution of named plaintiffs" in putative class actions, citing for support *Wilson v. Quest Diagnostics Inc.*, No. 18-11960, 2020 WL 401814, at *2 (D.N.J. Jan. 24, 2020).  Pl's Reply at 3-4.  In addition, Plaintiff argues that substitution of the named plaintiffs would be more "efficient and expeditious" for the Court and the parties than dismissal and the filing of a new action.  Pl.'s Sur-reply at 3.  Plaintiff argues that Ryan's substitution as the named plaintiff is not "a strategic attempt to bring new allegations[,]" but a measure necessary to adequately represent the interests of the putative class.  Pl.'s Reply at 6.

---

[7]  The parties have not cited any Third Circuit authority on this precise issue.

The central issue here is whether it is procedurally valid for a lead plaintiff in a putative class action to amend her complaint and substitute a new proposed lead plaintiff.  This issue and this action's procedural posture are nearly identical to those presented in *Wilson,* 2020 WL 401814, at *2.  In *Wilson,* a plaintiff filed a putative class action but subsequently fell ill from a "serious and extended illness" that prevented her from serving as the class representative, although the plaintiff wished to remain a member of the putative class.  *Id*. at *1.  The plaintiff moved under Rule 15 to substitute two new named plaintiffs with similar claims, and the court granted the motion to amend over the opposition of the defendant, who argued that the case should have been dismissed under Rule 41.  *Id*. at *1-2.  Defendant concedes that there is no meaningful distinction between the facts in this matter and in *Wilson*, but it argues that *Wilson* was wrongly decided.  Hearing Tr. 33:5-23.  Defendant argues that *Wilson* is flawed because it allows Plaintiff's counsel to create a "game of whack a mole" and to indefinitely prolong futile litigation by perpetually introducing new lead plaintiffs.  Hearing Tr. 33:20 to 34:6.  The Court disagrees.

First, as noted in *Wilson*, "[n]umerous courts in this Circuit and around the country routinely allow pre-certification substitution of lead plaintiffs in a variety of circumstances."  2020 WL 401814, at *2; *see also Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417, 430 (D.N.J. 2016) (noting that "the substitution of class representatives is allowed at the pre-certification stage").  For instance, courts in the Third Circuit have granted leave for plaintiffs to amend their complaints and substitute new putative class representatives in *Ceisler v. First Pennsylvania Corp.*, No. 89-9234, 1991 WL 83108 (E.D. Pa. May 13, 1991); *Rosa v. Tropicana Atlantic City Corp.*, No. 20-06909, 2022 WL 111045 (D.N.J. Jan. 12, 2022); and *Ortiz v. Callahan*, No. 21-11146, 2022 WL 3588101 (D.N.J. Aug. 22, 2022), among other cases.

Although Defendant cites to *Ludwig*, 2021 WL 2223833, this case does not support the proposition that a motion to amend is procedurally improper when a named plaintiff is unable to cooperate with counsel.  In *Ludwig*, two of the three named plaintiffs in a putative class action became unresponsive and did not make themselves available for depositions.  *Id*. at *1.  The plaintiffs' attorneys moved to withdraw as counsel, and the defendant moved to dismiss the action under Rule 41(b) for the plaintiffs' failure to prosecute.  *Id*.  The court granted both motions.  *Id*. at *4.  While *Ludwig* establishes that counsel *may* withdraw from representing an unresponsive client under certain circumstances, it does not state that counsel is *required* to withdraw and leave the action to be dismissed under Rule 41.  Here, Plaintiff's counsel has not sought to withdraw from representing Gaddy or the putative class, and Gaddy has now re-established contact with her attorneys.  Accordingly, *Ludwig* does not require the Court to deny Gaddy's Motion to amend.

Instead, a named plaintiff's ability to amend a complaint and name a new putative class representative depends on the named plaintiff's claim remaining justiciable.  *Lusardi v. Xerox Corp*., 975 F.2d 964, 974 (3d Cir. 1992).  Article III standing demands that a plaintiff's claim remain live throughout the entire litigation.  *Id*.  Thus, "when claims of the named plaintiffs become moot before class certification, dismissal of the action is required."  *Id*.  However, when a plaintiff's claim remains live, and the named plaintiff only seeks to withdraw as the class representative due to deteriorating health, "[n]o court has denied amendment under such circumstances."  *Wilson*, 2020 WL 401814, at *2.  Similarly, in *Rosa*, 2022 WL 111045, at *2 and *Ortiz*, 2022 WL 3588101, at *3, the courts  held that pre-certification substitution of lead plaintiffs is procedurally proper when the original named plaintiff's claim remains live and justiciable.  Here, Gaddy's claim remains live; it has not been dismissed or withdrawn; and Gaddy still intends to bring her claim as a member of the putative class.  Hearing Tr. 6:1-12.  Therefore, under the

circumstances present here, it is procedurally proper to grant Gaddy leave to amend her complaint and substitute Ryan as the new named plaintiff.

In addition, this standing requirement undercuts Defendant's argument that granting plaintiffs leave to amend in putative class actions would allow plaintiffs' attorneys to perpetually revive dead actions by repeatedly inserting new class representatives. For example, in *Beery v. Quest Diagnostics, Inc.*, No. 12-00231, 2013 WL 3441792, at *1 (D.N.J. July 8, 2013), three named plaintiffs filed a putative class action against their employer, but the plaintiffs' claims were dismissed before class certification based on arbitration clauses in their employment agreements. The plaintiffs moved to add four new plaintiffs to represent the class, but the court denied the motion because the action had been rendered moot upon the enforcement of the arbitration agreements. *Id*. at *3. The court then dismissed the entire action. *Id*. Accordingly, if a named plaintiff's claims fail, plaintiff's counsel cannot avoid dismissal by subsequently moving to amend the complaint to add new class representatives.

Lastly, permitting the substitution of lead plaintiffs here comports with the Third Circuit's liberal standard for the amendment of pleadings, *see Spartan Concrete Products, LLC*, 929 F.3d at 115, which "helps effectuate the general policy embodied in the Federal Rules favoring resolution of cases on their merits." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (internal quotation omitted). Ryan's substitution as a named plaintiff will allow the claims of the class to proceed toward a ruling on the merits, instead of the entire action being dismissed due to the unavailability of one named plaintiff. In addition, granting leave to amend is compatible with Federal Rule of Civil Procedure 1's directive to construe the Federal Rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." Defendant's proposal that Plaintiff's counsel must withdraw and file a new action would be more costly and time-

consuming for the Court and the parties when compared to Ryan's substitution as the lead plaintiff. Ryan's claims arise out of the same Data Breach, and the Second Amended Complaint does not introduce any new causes of action. Therefore, the Court finds that Plaintiff's Motion to amend is procedurally proper.

### II.     Ryan Has Standing and the Amendment is Not Futile

Next, Defendant argues that the proposed amendment is futile because Ryan still lacks standing. Defendant argues that the two unauthorized charges placed on Ryan's credit cards are not sufficiently concrete injuries to confer standing because they did not cause Ryan to suffer any out-of-pocket loss or other harm. Def.'s Br. at 17. Moreover, Defendant argues that Ryan lacks standing because the charges are not fairly traceable to the Data Breach for two reasons. *Id*. at 18. First, Ryan has not alleged that she provided her credit card account information to Defendant or that her credit card numbers were accessed by anyone during the Data Breach. *Id*. at 19. Second, the two charges occurred in August 2021 and June 2022, which Defendant argues is too remote in time after the August 2020 Data Breach. *Id*. at 20. Similarly, Defendant argues that the unauthorized opening of a dating website profile in Ryan's name does not confer standing because Ryan did not suffer any injury and this incident is not fairly traceable to the Data Breach. *Id*. at 17 n.5. At oral argument, Defendant's counsel asserted whether the Plaintiffs' PII was leaked or made available to cybercriminals is unknown, and this lack of "established liability" is a "distinguishing factor" that makes Ryan's allegations untraceable to the Data Breach. Hearing Tr. 23:18-23.

Plaintiff acknowledges that Ryan may have lacked standing at the time of the First Amended Complaint, but Plaintiff contends that the two unauthorized credit card charges have since established her Article III standing. Pl.'s Reply at 7. Plaintiff argues that unauthorized

charges are "actual misuse" of PII, which qualify as concrete injuries.  *Id.* at 8.  Plaintiff cites to

the Court's earlier Opinion, *see* MTD Opinion at 11, which held that Gaddy suffered a sufficiently

concrete injury when an unauthorized credit card was opened in her name three months after the

Data Breach.  Pl.'s Reply at 7-8.  Although Ryan cannot currently say whether her credit card

number was exposed in the Data Breach, she argues that a person could have plausibly determined

her credit card number from the combination of highly sensitive PII that was compromised.  *Id*. at

9; Hearing Tr. 15:6 to 16:25.  Also, the Second Amended Complaint cites a U.S. Government

Accountability Office study which found that hackers may hold stolen data for over a year before

using it to commit identity theft.  Pl.'s Br., Ex. 2, ¶ 59; Hearing Tr. 18:13-18.

In response, Defendant attempts to distinguish Gaddy's allegations from Ryan's.  Def.'s

Supp. Br. at 4.  Defendant argues that possible disclosure of a person's name, home address, Social

Security number, and bank account information may be enough to open a new unauthorized credit

card account, but not to place a charge on an existing credit card account.  *Id*. at 4-5.  Defendant

also distinguishes the timing of the two plaintiffs' injuries, arguing that Gaddy's injury, which

occurred three months after the Data Breach, is materially distinguishable from Ryan's injuries,

which occurred twelve and twenty-two months after the Data Breach.  *Id*.  Defendant does not cite

any authority identifying the length of time that makes an injury too remote and no longer fairly

traceable to a hacking incident.  *Id*.

Defendant challenges the proposed amendment on the basis of futility.  In this context,

futility means that a complaint, as amended, would fail to state a claim upon which relief could be

granted.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  Accordingly, the futility of an

amended complaint is governed by the same standards of legal sufficiency as a motion to dismiss

under Federal Rule of Civil Procedure 12.  *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d

238, 243 (3d Cir. 2010).  Under these standards, a court must accept all factual allegations in a proposed amended complaint as true and view them in the light most favorable to the plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).  Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  Moreover, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

"Under Article III of the United States Constitution, the power of the judiciary 'extends only to Cases and Controversies.'"  *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)).  "One element of the case-or-controversy requirement is that [plaintiffs] . . . must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 578 U.S. at 338.  "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021).  Although "general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), the complaint must still "clearly and specifically set forth facts sufficient to satisfy" Article III.  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

### A. Concrete and Actual Injury in Fact

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). A particularized injury "must affect the plaintiff in a personal and individual way." *Id.* An injury is concrete if it is "real, and not abstract." *Ramirez*, 141 S. Ct. at 2204.

Here, the Third Circuit's decision in *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011), governs the analysis. In *Reilly*, an unknown hacker infiltrated an employer's computer system and potentially gained access to employees' personal and financial information. *Id.* at 40. The Third Circuit held that alleging the mere possibility that a criminal could later misuse the plaintiffs' information, without more, did not establish standing. *Id.* at 42. "Unless and until these conjectures come true, [the plaintiffs] have not suffered any injury; there has been no misuse of the information, and thus, no harm." *Id.* In *Reilly*, the plaintiffs' "credit card statements are exactly the same today as they would have been had [the employer's] database never been hacked[,]" and therefore, the plaintiffs lacked standing. *Id.* at 45; *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 153 (3d Cir. 2022) (explaining that misuse of PII can establish Article III standing in identity theft cases).[8]

---

[8] In *Clemens*, which was decided after this Court's earlier opinion on Defendant's motion to dismiss, *see* MTD Opinion, the Third Circuit clarified *Reilly* and explained that "misuse is not necessarily required" to create an imminent and concrete injury in fact. *Clemens*, 48 F.4th at 153-54. If the alleged harm is "adequately analogous to a harm traditionally recognized as giving rise to a lawsuit[,]" then a plaintiff may have standing even if misuse of PII has not yet occurred. *Id.* at 154. For instance, if exposure to the risk of identity theft causes a plaintiff emotional distress or requires expenditures on mitigation measures like credit monitoring services, the plaintiff may have an injury in fact stemming from the risk of future harm. *Id.* at 156. However, since the parties' arguments focus on the misuse of Ryan's PII, Hearing Tr. 36:11-23, and the Court finds that Ryan has adequately alleged that she suffered actual misuse, the Court need not reach these other potential sources of standing.

In another case, an unidentified user gained access to the defendant's computer system and accessed the plaintiffs' personal information. *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *2-3 (D.N.J. Dec. 16, 2021). Some of the plaintiffs alleged that they discovered fraudulent charges on their financial accounts and had new fraudulent accounts opened in their names. *Id.* at *7-8. The court found that these alleged harms were "quintessentially concrete" and that those plaintiffs had "adequately alleged an injury-in-fact" through the actual misuse of their personal information. *Id.* at *7. In addition, the court rejected the defendant's arguments that only "unreimbursed" payments can serve as injuries. *Id.* at *8. Even though the plaintiffs had remedied the unauthorized charges, they had still suffered intangible harms to their common-law privacy interests through "the wrongful use and dissemination of their private information." *Id.* (citing *TransUnion*, 141 S. Ct. at 2208); *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638-39 (3d Cir. 2017) (explaining that "'unauthorized *disclosures* of information' have long been seen as injurious[,]" and "improper dissemination of information can itself constitute a cognizable injury") (emphasis in original) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016)).

Here, Ryan has alleged actual misuse of her PII. Unlike in *Reilly*, Ryan's credit card statements did not look the same after the Data Breach; rather, she discovered unauthorized charges on her Capital One card in August 2021 and June 2022. Pl.'s Br., Ex. 2, ¶¶ 22, 25. In contrast to the First Amended Complaint, Ryan is not simply alleging annoyance or anxiety over future harm, or the risk that someone could later misuse her personal information. Ryan alleges that misuse has now occurred through the unauthorized disclosure and dissemination of her PII, and this is a well-established concrete and actual injury in fact. In fact, Defendant's counsel

acknowledged in oral argument that Ryan has suffered "actual misuse" of her PII, while maintaining that Ryan lacks standing because she did not incur any out-of-pocket loss.  Hearing Tr. 43:20 to 44:7.

However, as stated in *American Medical Collection Agency, Inc.*, it is irrelevant that Ryan was able to cancel her credit cards and was reimbursed for the fraudulent charges both times.  *See* Pl.'s Br., Ex. 2, ¶¶ 23, 26.  Misuse of financial information is a cognizable, intangible injury that, even without financial loss, is sufficient to confer standing.  A party's financial loss may affect the amount of its damages, but financial loss is not always required for an injury in fact.  Also, as recognized in *American Medical Collection Agency, Inc.* and this Court's earlier Opinion, *see* MTD Opinion at 12-13, actual misuse can occur through the opening of unauthorized accounts, even if the plaintiff did not incur any charges.  Therefore, the unauthorized creation of an account on a dating website in the Netherlands under Ryan's identity is another adequate and independent injury in fact.  In summary, the unauthorized credit card charges and the fraudulent dating website account are concrete and actual injuries in fact that satisfy the first prong of the Article III standing analysis.

### B.  Traceability

Traceability means that the plaintiff's injury was caused by the challenged action of the defendant, as opposed to an independent action of a third party.  *Lujan*, 504 U.S. at 560.  The Third Circuit has not yet articulated a single standard for establishing this causal relationship, although but-for causation and concurrent causation are both sufficient to satisfy traceability.  *Clemens*, 48 F.4th at 158.

In the proposed Second Amended Complaint, the nature of the allegedly stolen PII supports a causal connection between the Data Breach and the unauthorized opening of an online dating

profile with Ryan's identity.   Ryan has alleged that her name, address, telephone number, Social Security number, W-2 details, and bank account information, among other non-public information, were potentially compromised in the Data Breach.   Pl.'s Br., Ex. 2, ¶¶ 12, 21.   This type of personal information is likely more than enough to allow a person to create a dating profile account.   Also, it is reasonable to infer that the Data Breach, and not some other event, was the source of the disclosure.   Although Ryan may not have proof right now that hackers accessed her PII during the Data Breach, it is not her obligation at the pleading stage to prove the allegations.[9]   Instead, the Court must accept all factual allegations in the Second Amended Complaint as true and view them in the light most favorable to Ryan.   *Doe*, 30 F.4th at 340; *see, e.g.*, *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 665-66 (E.D. Pa. 2015) (finding that misuse of a plaintiff's PII was fairly traceable to a theft of the plaintiff's PII from his employer, even without specific allegations of how the criminals obtained the information).

Defendant cites *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451 (D.N.J. 2013) in support of its argument that there is an overly speculative and conclusory link between the Data Breach and the misuse of Ryan's PII.   However, *Polanco* is not analogous to the present matter.   In *Polanco*, the plaintiff patient brought an action against various hospitals and healthcare providers alleging that a laptop computer containing the PII of thousands of patients was stolen from an employee's vehicle.   *Id.* at 457.   As to certain defendants, the court dismissed the complaint because the plaintiff lacked standing.   *Id*. at 464-68.   For example, the plaintiff's claim against one defendant was dismissed because plaintiff had no relationship with that defendant, and it never possessed the plaintiff's PII.   *Id*. at 465.   The plaintiff's claim against another defendant was

---

[9] Indeed, in the Court's earlier Opinion on Defendant's motion to dismiss, the Court stated that Defendant's traceability argument was "not well taken" due to "[t]he sensitive nature of the PII allegedly stolen. . . ."   MTD Opinion at 13.

dismissed because although the plaintiff had provided her PII to this defendant, this specific data was not on the stolen laptop. *Id*. at 469. The court found that these injuries were not traceable to the defendants. *Id*. at 465, 469.

Unlike the plaintiff in *Polanco*, Ryan has alleged a substantial relationship with Defendant. Ryan has alleged that she was employed by Defendant and provided Defendant with her PII as a condition of her employment. Pl.'s Br., Ex. 2, ¶¶ 20-21. Further, Ryan has alleged that the PII she provided was compromised in the Data Breach, *id*. ¶ 12, an allegation supported by Defendant's letters to the potentially affected individuals. *See* FAC, Exs. 1, 2. Here, Ryan has alleged the causal connections absent in *Polanco*, and "[c]ourts analyzing cases involving the loss of PII have consistently declined to dismiss claims on the basis of a lack of a sufficient causal connection where the defendant has some direct control over the plaintiff's PII." *Enslin*, 136 F. Supp. 3d at 667.

Still, the Court recognizes that Ryan's allegations of two unauthorized credit card charges may not be as directly traceable to the Data Breach as the unauthorized dating account opened in her name. A person's name, address, telephone number, Social Security number, bank account information, and W-2 details are likely sufficient to allow an unauthorized person to open a credit card account, *see* Pl.'s Br., Ex. 2, ¶¶ 12, 21, but making a charge requires a credit card number, and Ryan does not explicitly allege that her credit card numbers were accessed in the Data Breach. Also, as Defendant argues, the second alleged charge is "even more attenuated" because it was placed on a credit card that was not open at the time of the Data Breach. Hearing Tr. 28:23 to 29:6; *see* Pl.'s Br., Ex. 2, ¶¶ 23-25. Still, considering the wide range of information that was potentially exposed in the Data Breach, it is plausible that malicious actors could have used Ryan's PII to fill in the blanks of her financial accounts and obtain her credit card numbers. This issue is

better left for investigation during discovery than on a motion to amend, without the benefit of factual findings and expert reports. Therefore, the Court finds that the two credit card charges also give Plaintiff standing. *See, e.g.*, *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *12 ("Defendants' argument that the specific information Plaintiffs provided was insufficient to allow criminals to commit identity theft is a question of fact more appropriately resolved on summary judgment or at trial.").

Lastly, Plaintiff's injuries did not occur too long after the Data Breach to break the causal chain of traceability. The Second Amended Complaint alleges that PII accessed in data breaches is frequently sold among identity thieves on the dark web, and hackers may wait over a year to begin using stolen information. Pl.'s Br., Ex. 2, ¶¶ 54-59. In fact, Defendant tacitly acknowledged the ongoing risk of identity theft after the Data Breach by offering potentially affected persons twenty-four months of identity protection services. *See* FAC, Exs. 1, 2. Ryan's alleged injuries occurred within this period, at twelve and twenty-two months after the Data Breach. Pl.'s Br., Ex. 2, ¶¶ 23, 25. Also, this length of time is in line with other cases. For example, in *Enslin*, 136 F. Supp. 3d at 659, 666, it was unclear when the plaintiff's PII was stolen, but the theft may have occurred up to seven years before the PII was misused. The court found that this passage of time did not break the chain of "but for" causation required for traceability. *Id.* at 666-67. *See also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327 (11th Cir. 2012) (finding that a "logical connection" plausibly existed between a data breach and two instances of identity theft that occurred ten and fourteen months later, allowing a pleading to survive dismissal).

In summary, Ryan's allegations of two unauthorized credit card charges and the fraudulent opening of an online dating account are intangible but cognizable injuries in fact because they involve the actual misuse of her PII. Also, these injuries are fairly traceable to the Data Breach

since they plausibly could be accomplished because of the type of personal information Defendant had under its control and because they did not occur too long after the Data Breach to break the chain of "but for" or concurrent causation.  Therefore, the Court finds that Ryan's allegations now support Article III standing and the Second Amended Complaint is not futile.

### III.    The Motion is Timely and Does Not Cause Undue Delay

Furthermore, Defendant argues that the Motion must be denied because it is untimely. Relying on *Spartan Concrete Prods.*, 929 F.3d at 115, Defendant argues that Ryan should have asserted her claims against Defendant in August 2021, when the first unauthorized charge appeared on her Capital One credit card, a full year before the Motion to amend was filed in August 2022. Def.'s Br. at 21.  In addition, Defendant argues that Plaintiff's counsel waited too long to file this Motion after Gaddy ceased communicating with them.  *Id.*  Defendant contends that Plaintiff's counsel continued to "string [Defendant] along" by continuing discovery for at least three months before Plaintiff's counsel disclosed that they had lost contact with Gaddy.  *Id.* at 3, 21.  At oral argument, Defendant's counsel claimed that this time amounted to "wasting effort" by "defending against a plaintiff that didn't exist at that time."  Hearing Tr. 38:13-16.

In response, Plaintiff argues that the Court should not deny leave to amend a pleading simply because of a delay in filing the Motion. Pl.'s Reply at 10.  Plaintiff notes that Rule 15 does not set any deadlines for filing a motion to amend.  *Id.*  Plaintiff's counsel also argues that they acted diligently by actively attempting to re-establish contact with Gaddy, and that counsel "was also under no obligation" to keep Defendant informed of each attempt to reach Gaddy.  *Id.* at 10-11.

"The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay.  In fact, delay alone is an insufficient ground to deny leave to amend."

21

*Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). A delay becomes undue only when it places an "unwarranted burden on the court." *Id.*; *see also Mullin*, 875 F.3d at 151 ("[D]elay that is 'undue'—a delay that is protracted and unjustified—can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave." (footnote omitted)). The issue of undue delay requires inquiry into the moving party's motives for not amending its complaint earlier. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). A motion for leave to amend may be denied if the moving party can offer "no cogent reason" for its delay in seeking the amendment. *Mullin*, 875 F.3d at 151.

Here, the Court finds that Plaintiff's delay in filing the Motion is not so protracted or unjustified that it has become undue. Plaintiff's counsel was not required to file the Motion in August 2021, when the first unauthorized charge was made to Ryan's credit card, because Gaddy was still participating in the litigation at that time. Defendant cites to no authority to support its assertion that a motion to amend must be brought as soon as another potential lead plaintiff incurs an injury sufficient to confer standing. To be sure, a plaintiff need not bring in all other potential class representatives simply because the named plaintiff could hypothetically drop out of the action in the future.

Also, Defendant has not established that Gaddy or Plaintiff's counsel intended to delay the action. It is uncontested that Gaddy has been suffering from severe medical conditions that have limited her ability to participate in the litigation, and her availability was further limited by a lack of access to transportation. Gaddy Decl. ¶¶ 1, 2, 4, 6, 12. Gaddy did not choose to stop communicating with her attorneys; instead, her family disabled her telephone without Plaintiff's counsel's knowledge. *Id*. ¶ 3. Plaintiff's counsel repeatedly attempted to regain contact with Gaddy and did not simply ignore the loss of communication. Pl.'s Br. at 3. Defendant offers no

22

support for its argument that attorneys must regularly inform opposing counsel about their attempts to contact a client.  *See* Hearing Tr. 37:1-11.  Also, it would be unreasonable to expect counsel to immediately stop work on a case and immediately withdraw discovery requests when communication difficulties arise with a client, since doing so would risk further litigation delays.

The Court finds that the delay between Plaintiff's counsel's loss of contact with Gaddy and the filing of the Motion in July 2022 is not excessive.  *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204-05 (3d Cir. 2006) (surveying circuits and finding that a delay of less than a year rarely justifies denying leave to amend).  There is some ambiguity about the length of Gaddy's loss of contact with Plaintiff's counsel, although the communication gap lasted significantly less than one year.[10]  Also, Plaintiff's counsel acted promptly to file the Motion to amend after confirming that Gaddy wished to withdraw as the lead plaintiff.  Gaddy informed Plaintiff's counsel of her intention to withdraw as the putative class representative in July 2022, and Plaintiff's counsel filed the Motion to amend that same month.  Hearing Tr. 9:1-8.  Moreover, granting leave to amend will not place an unwarranted burden on the Court by requiring major scheduling changes or significantly increasing the factual or legal complexity of the case.  *See, e.g., Magazzu v. Volmar Servs., Inc.*, No. 08-2078, 2009 WL 10688007, at *2 (D.N.J. Oct. 7, 2009) (holding that a party's delay in bringing a motion to amend a pleading was not undue, despite occurring one and a half years into the action, because the motion was made prior to the close of discovery, and the new asserted claim was related to the previous one).

---

[10]   Defendants initially contended that Plaintiff's counsel stopped speaking with Gaddy no later than May 4, 2022, over three months before the filing of the Motion.  Def's Br. at 3.  Yet, as Defendant's counsel notes, *see* Hearing Tr. 31:17 to 32:1, Gaddy's declaration could be interpreted to mean that she stopped speaking with Plaintiff's counsel as early as October 2021, when she was admitted to a physical rehabilitation hospital.  *See* Gaddy Decl. ¶ 1.  However, there is no indication that Gaddy's personal issues began to affect the litigation until mid-2022.  Also, Gaddy attests that she decided to continue no longer as the putative class representative in June 2022.  Hearing Tr. 8:12-19.

In addition, *Spartan Concrete Prods., LLC*, 929 F.3d at 115, is significantly distinguishable from the case at hand.  There, the court denied both parties' motions to amend, which were filed after the fact discovery deadline, after the parties failed to comply with five discovery orders, and because granting leave to amend would have placed a "burden on the Court's ability to manage its caseload."  *Id*. at 116.  Here, the litigation is in fact discovery, and a motion to amend would be less disruptive to the parties and the Court.  Plaintiff's counsel has not repeatedly caused delays or failed to comply with discovery deadlines.  Thus, because Plaintiff's counsel did not intend to delay the litigation, and because the amendment would not burden the Court or Defendant, the Court finds that any delay in filing the Motion is not undue and does not justify denying leave to amend.

### IV.    The Motion is Not Unfairly Prejudicial to Defendant

Defendant's fourth and final argument in opposition to Plaintiff's Motion to amend is that the amendment would be "unduly prejudicial."  Def.'s Br. at 22.  Defendant states that it has "invested significant time and resources" into investigating Gaddy's allegations, preparing and serving discovery related to Gaddy's claims, and planning to oppose a motion for class certification with Gaddy as the class representative.  *Id*.  Defendant claims that the Second Amended Complaint would cause "all of the investigation and work conducted to date" to be "wasted."  Def.'s Supp. Br. at 6.

Plaintiff argues that Defendant has not shown that it would be "prejudiced in any significant way apart from the time and effort required to continue litigating this case."  Pl.'s Reply at 11.  Plaintiff contends that substituting Ryan as the class representative would not significantly delay the litigation, since Ryan has already responded to Defendant's interrogatories and document production requests.  Pl.'s Sur-reply at 8; Def.'s Supp. Br., Exs. 1-3.  Plaintiff argues that

Defendant's proposal to dismiss and re-file the action with Ryan as the lead plaintiff would only delay the action more.  *Id*.  Relying on *In re Caterpillar Inc.*, 67 F. Supp. 3d 663, 668 (D.N.J. 2014), Plaintiff argues that any prejudice caused by the amendment would be merely "incidental," which is not sufficient to deny a motion to amend.  Pl.'s Reply at 11.

In response, Defendant argues that Plaintiff's reliance on *In re Caterpillar Inc.* is misplaced because the amended complaint in that matter would "streamline the litigation and simplify the issues in the case," whereas here, the proposed amendment would result in "an entirely new lawsuit."  Def.'s Supp. Br. at 6.  In turn, Plaintiff argues that the claims of Gaddy and Ryan are "highly related," since both plaintiffs were victims of the same data breach, and the only difference between them was the time and manner in which their PII was misused.  Pl.'s Sur-reply at 9.

"It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment."  *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978).  "In evaluating the extent of prejudice, courts may inquire into the hardship to the non-moving party if leave to amend is denied."  *Id*.  Specifically, courts consider whether an amended pleading would result in additional discovery, cost, or preparation to defend against new facts or theories.  *Cureton*, 252 F.3d at 273; *see also Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008) ("Generally, prejudice includes the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (stating that prejudice depends on "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." (internal quotation omitted)).

"Incidental prejudice and delay are insufficient grounds on which to deny leave to amend." *In re Caterpillar Inc.*, 67 F. Supp. 3d at 668 (citation omitted). *In re Caterpillar* was a consolidated multi-district litigation matter that the plaintiffs sought to certify as a class action. *Id*. at 665-66. After the defendant filed a motion for summary judgment and an opposition brief to the plaintiffs' motion for class certification, the plaintiffs moved to amend their complaint to expand the class definition and to modify their claims. *Id*. at 666-67. Although the defendant argued that the motion to amend would result in unfair prejudice because "it ha[d] already invested substantial resources" opposing plaintiffs' motion, the court granted the plaintiffs' motion because any prejudice would be merely "incidental." *Id*. at 668-69. Although the motion would result in "some duplicative work and delay[,]" the motion would "streamline and simplify the case[,]" and most of the work that the defendant had done on its summary judgment motion and class certification opposition would not "go to waste." *Id*. at 669.

Here, the Court is persuaded that granting Plaintiff's Motion would not unduly prejudice Defendant. The substitution of Ryan as the class representative would not be excessively costly or burdensome to Defendant because the facts and legal issues in her claims are not significantly different from Gaddy's. Ryan, like Gaddy, is a former employee of Defendant, and the two Plaintiffs claim that they provided Defendant with the same types of PII. Pl.'s Br., Ex. 2 ¶¶ 20-22. Also, Ryan's claims are based on same incident from which Gaddy's claims arose; namely, the August 2020 Data Breach. *Id*. While the harms alleged by the two Plaintiffs are not identical, they are very similar. Gaddy alleged that an unauthorized third person opened a credit card in her name, *see* FAC ¶ 22, while Ryan has alleged that third parties opened an account on a dating website in her name and made two unauthorized charges on her credit cards. Pl.'s Br., Ex. 2, ¶¶ 23, 25, 28. While Defendant may need to request additional discovery to evaluate Ryan's claims,

the factual matter is not drastically different.  In addition, Ryan has shown a willingness to engage in the litigation by providing discovery and offering her availability for a deposition even before her reinstatement in this matter, so there is no indication that Ryan would be an uncooperative lead plaintiff.  Hearing Tr. 16:22 to 17:17.

Moreover, the legal research previously performed by Defendant is unlikely to be "wasted."  Ryan seeks to raise negligence and declaratory judgment causes of action, the same two causes of action remaining for Gaddy.  Pl.'s Br., Ex. 2, ¶¶ 95, 117.  In fact, Defendant concedes that the causes of action in the Second Amended Complaint are not materially different.  Hearing Tr. 38:17-23.  While the amendment here may not simplify the case, it does not significantly complicate the matter, and Defendant is unlikely to be subjected to more than incidental, duplicative work.  Furthermore, this matter is at an earlier stage than in *In re Caterpillar* because Plaintiff has not yet moved for class certification and neither party has moved for summary judgment.  Defendant will need to repeat even less work here.  Thus, the Second Amended Complaint will not result in an entirely new lawsuit but rather, a minor modification to an existing one.

Lastly, Defendant compares this case to *Ford Motor Co. v. Edgewood Properties, Inc.*, No. 06-1278, 2011 WL 1599609 (D.N.J. Apr. 27, 2011), where the court denied a motion for leave to amend because it would require "additional and different discovery."  Def.'s Br. at 22.  However, the scale of the additional discovery in *Ford Motor Co.* far exceeds the scale of Defendant's additional discovery here.  In *Ford Motor Co.*, which was a complex environmental case brought under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), a party moved to add claims on behalf of eight other parties.  *Id.* at *1, n.1.  The proposed amendment would have necessitated "multiple depositions" and a large volume of new

discovery.  *Id*. at *4.  Unlike the circumstances in *Ford Motor Co.*, Plaintiff's Motion to amend will add a factually similar claim by only one additional Plaintiff.  While the amendment may result in some additional discovery, Defendant has not argued that the amendment will be excessively costly.  Nor has Defendant argued that the amendment would result in the loss of evidence through time or faltering memory.  Because Plaintiff's proposed Second Amended Complaint would not cause Defendant to suffer excessive cost or difficulties proceeding in this matter, the Court finds that the amendment is not unduly prejudicial.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Marixsa Gaddy's Motion to amend the First Amended Complaint is **GRANTED**.  An appropriate Order accompanies this Opinion.


s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge


cc:  Hon. Robert B. Kugler, U.S.D.J.